## Commonwealth v. Deibler.

*Criminal law—Piggeries—Violation of health regulations—Department of Health—Advisory board—Regulations—Validity—Act of April 27, 1905.*

1. Upon the indictment of one charged with unlawfully violating certain regulations of the Pennsylvania Department of Health, the court wherein the person charged is tried is vested with power to pass upon the reasonableness of the orders and regulations.

2. The regulation of the department, known and styled "Regulations of the Advisory Board," art. iii, § 2, adopted May 17, 1920, prohibiting the accumulation of manure where it can prejudicially affect any source of drinking water, etc., is not unreasonable.

3. Article v, section 2, requiring that an adequate water supply be provided to keep piggeries clean and sanitary, and also requiring an impervious floor with adequate drainage, is not unreasonable.

4. Article v, section 3, prohibiting any pigsty to be built or maintained within 300 feet of any inhabited house or public meeting-house on an adjoining property is unreasonable, unauthorized and void.

Motion to quash indictment. Q. S. Dauphin Co., Sept. Sess., 1922, No. 172.

*George Ross Hull,* Deputy Attorney-General, and *Robert T. Fox,* Assistant District Attorney, for Commonwealth.

*Maurice R. Metzger* and *M. E. Stroup,* for defendant.

Fox, J., Dec. 13, 1922.—The defendant is indicted for a violation of certain regulations of the Pennsylvania State Department of Health as approved May 17, 1920, on three counts; the counts in substance and in part being as follows, viz.:

"1. That on June 22, 1922, he did and has continued to unlawfully violate certain regulations of the Pennsylvania State Department of Health as approved May 17, 1920, in that he, the said Peter Deibler, then and there in the conduct of a certain piggery in the County of Dauphin situate, did allow manure to accumulate in said piggery, where, as a source of fly breeding, said manure became a menace to public health.

"2. That he, the said Peter Deibler, did and has continued to unlawfully violate certain regulations of the Pennsylvania State Department of Health as approved May 17, 1920, in that he then and there, in the conduct of said piggery in the County of Dauphin situate, did fail to provide an adequate water supply for the purpose of keeping said piggery clean and sanitary; did fail to build the floor in the pens of said piggery of concrete or some other impervious substance, and did fail to make or have adequate provision for drainage to a cesspool, sewer or treatment works approved by the said Department of Health.

"3. That he, Peter Deibler, did and has continued to unlawfully violate certain regulations of the Pennsylvania State Department of Health, in that he did on the day and year aforesaid, in the county aforesaid, build and maintain a certain pigsty, situate within 300 feet of any inhabited house and public meeting-house on an adjoining property."

When the case was called for trial and before plea was entered, the defendant, by his counsel, moved the court to quash the indictment for the following reasons:

1. The indictment fails to set forth an indictable offence.

2. The statutes under which the indictment was attempted to be drawn were not complete when they left the legislative halls as required by law, further orders and regulations or rules and regulations now attempted to be enforced having been subsequently added by the Department of Health.

3. To permit the Department of Health to make and enforce the rules and regulations or orders and regulations upon which the present indictment is based would be to permit legislation by said department contrary to section 1 of art. II of the Constitution of Pennsylvania.

4. The Act of April 27, 1905, P. L. 312, attempting to confer authority upon the Department of Health to make rules and regulations and enforce such rules and regulations, is unconstitutional and void.

5. It is not alleged in the indictment that the orders and regulations or rules and regulations were promulgated as required by the Act of March 17, 1921, P. L. 37, or the Act of April 27, 1905, P. L. 312.

6. The rules and regulations or orders and regulations upon which this indictment is based are unreasonable, discriminatory and void.

The case is one involving highly important questions, and, as we pass along, we must bear in mind that the purpose of the act which created the Commissioner of Health and the advisory board, and conferred powers upon them, was for the protection of the health of the people of the Commonwealth. On the other hand, we must not overlook the provisions of the act and heed them so that the powers as granted are not exceeded.

The act to which we refer is that of April 27, 1905, P. L. 312. In section 5 thereof it provides:

"The advisory board shall meet in the capitol, at Harrisburg (unless otherwise ordered by the board), on the call of the Commissioner of Health.

"It shall be the duty of the advisory board to advise the commissioner on such matters as he may bring before it, and to draw up such reasonable orders and regulations as are deemed by said board necessary for the prevention of disease and for the protection of the lives and health of the people of the State, and for the proper performance of other work of the Department of Health."

In section 15: For the promulgation of the rules and regulations. And in section 16: "Every person who violates any order or regulation of the Department of Health . . . shall be deemed guilty of a misdemeanor, &c."

That the court wherein the person charged with the violation is tried is vested with the power to pass upon the reasonableness of the orders and regulations is not disputed, and the proposition is sustained by authority: Com. v. Lambrecht et al., 3 Pa. C. C. Reps. 323.

In considering these reasons, we will take them up in their reverse order, and our first inquiry is, are the regulations and orders unreasonable, discriminatory and void? The regulations referred to are known and styled as "Regulations of the Advisory Board." The ones which are alleged to have been violated are amongst those adopted on May 17, 1920, and found in article III, section 2, which reads as follows: "Manure shall not be allowed to accumulate in any place where it can prejudicially affect any source of drinking water, or where, as a source of fly breeding, it may become a menace to public health."

Article V, section 2, which reads as follows: "All slaughter-houses, rendering works, bone-boiling establishments, depositories for dead animals, garbage disposal works, piggeries and similar establishments handling organic matter shall have an adequate water supply for the purpose of keeping the place clean and sanitary. All floors shall be constructed of concrete or other impervious material, and shall have adequate provisions for drainage to a cesspool, to a sewer or treatment works approved by the State Department of Health."

3 D. & C.

Article v, section 3, which reads as follows: "No pigsty shall be built or maintained on marshy ground or land subject to overflow, nor within 100 feet of any stream or other source of water supply, nor within 300 feet of any inhabited house or public meeting-house on an adjoining property. When garbage is fed to pigs, provision shall be made so that all unconsumed garbage shall be removed daily and disposed of by burial or incineration. All garbage shall be handled and fed upon platforms of concrete or other impervious material. Unslaked lime, hypochlorite of lime, borax or mineral oil shall be used daily in sufficient quantities to prevent offensive odors and the breeding of flies."

The first count is to the effect that in the conduct of a certain piggery the defendant allowed manure to accumulate therein, where, as a source of fly breeding, the manure became a menace to public health. If this is so, it was a violation of article III, section 2. We see nothing unreasonable in this regulation; that sources of drinking water should be protected is most important; to prohibit a source of fly breeding where it may become a menace to public health is certainly reasonable.

The second count is to the effect that in the conduct of a piggery the defendant failed to provide an adequate water supply for the purpose of keeping the piggery clean and sanitary, and failed to build the floor in the pens of the piggery of concrete or some other impervious substance, and failed to provide adequate drainage to a cesspool, sewer or treatment works approved by the Department of Health. If this is so, it was a violation of article v, section 2. We see no unreasonable requirement in this section.

The third count is to the effect that the defendant built and maintained a pigsty situate within 300 feet of an inhabited house and within 300 feet of a public meeting-house on an adjoining property. If this is so, it was a violation of article v, section 3. This regulation is far-reaching in its effect. If permitted to stand, it would most likely make every owner of a pigsty in this State remove the same from its present location. From the beginning of the history of our Commonwealth in the laying out of our towns, cheap as the lands then were, there were few lots in the plans that had a depth or width of 300 feet, and in our small towns and villages to this day there can be found few, if any, lots that have either a depth or width of anything approaching 300 feet. This being so, the regulation in effect prohibits people living in such places from keeping swine on their premises. Yet it has been the custom from their beginning for the frugal inhabitants of such places to obtain shoats in the spring of the year, raise and fatten them on the premises, and thus make provision for much of their meat food for the ensuing year. On the farms, many of the pigstys are not 300 feet away from the houses of the farmers, and the enforcement of this regulation would work a hardship on them, perhaps much to the discouragement of the farmers raising hogs. If this regulation had been made to apply to the more densely populated parts of our State, it might be regarded as reasonable, but its restraint extends everywhere throughout our Commonwealth, and is an unreasonable restraint upon many of the people thereof. We, therefore, regard this regulation as unreasonable and unauthorized by the act of assembly empowering the advisory board to draw up reasonable orders and regulations, and it is void.

Wherefore, the third count of the indictment is quashed.

As to the fifth reason, we say that it is unnecessary to allege in the indictment that the regulations were promulgated as is required by the act. The promulgation is not a completion of the regulation; it is not a requirement prior to their becoming regulations, but a requirement subsequent; it is for

the purpose of circulating information as to the contents of the regulations. The presumption is that the promulgation was made as required by the statute.

The other reasons in the motion to quash go to the constitutionality of the act. We will not determine this question finally at this time. The presumption is in favor of the constitutionality of the act. We will, for the present, rest upon this presumption, without prejudice, however, to the defendant to raise the same question on a motion in arrest of judgment and for a new trial, in the event that, in his opinion, that may be necessary.

The third count in the indictment is quashed and we let the first and second counts stand. The motion to quash the indictment as a whole is, therefore, overruled.

From William Jenkins Wilcox, Harrisburg, Pa.